**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**Charleston Division**

| | |
|---|---|
| GREGORY LITTLES, ) ) Plaintiff, ) ) v. ) ) UNITED STATES OF AMERICA, ) ) Defendant. ) ) | Civil Action No. 2:22-cv-4389-RMG |

## COMPLAINT

Plaintiff Gregory Littles, by counsel, states as follows for his Complaint against Defendant United States of America:

### JURISDICTION AND VENUE

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* (the "FTCA"). This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b)(1).

2. Prior to the institution of this action, on November 25, 2020, an administrative tort claim was filed with the Department of Veterans Affairs as required by 28 U.S.C. § 2675(a), which is attached hereto as **Exhibit A**.

3. On April 4, 2022, Plaintiff received a letter from the Department of Veterans Affairs denying his claim, a copy of which is attached hereto as **Exhibit B**.

4. On July 21, 2022, Plaintiff filed a request for reconsideration with the Department of Veterans Affairs, a copy of which is attached hereto as **Exhibit C**.

5. On August 31, 2022, Plaintiff received a letter from the Department of Veterans Affairs denying his request for reconsideration, a copy of which is attached hereto as **Exhibit D**.

1

6. Accordingly, Plaintiff's claim is ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

7. Venue is proper in this judicial district pursuant to U.S.C. § 1402(b) as the cause of action arose within the District of South Carolina, Charleston Division.

8. At all times relevant to this action, Defendant owned and operated the Ralph H. Johnson VA Medical Center ("Charleston VAMC") and its affiliated outpatient clinics.

9. At all times relevant to this action, the agents, servants, employees, and personnel of Defendant were acting within the course and scope of their employment in providing medical care and treatment to Mr. Littles.

10. Mr. Littles is a veteran of the United States Armed Forces and thus was entitled to, and frequently received, medical care at the Charleston VAMC and its affiliated clinics.

11. The medical care described as follows was provided to Mr. Littles at the Charleston VAMC and/or its affiliated clinics unless otherwise stated.

12. To the extent S.C. Code Ann. § 15-36-100(B) may be deemed applicable in this action, Plaintiff has attached the expert report of Dr. Peter Condro as **Exhibit E**.

## GENERAL ALLEGATIONS

13. Plaintiff restates and re-alleges paragraphs 1 through 12 as if fully stated herein.

14. On March 5, 2010, Mr. Littles established care at the Charleston VAMC with an appointment in the primary care clinic with Dr. Linda S. Myers ("Dr. Myers").

15. At this appointment, Mr. Littles was noted to have a medical history of obesity, hypertension, sickle cell, and sleep apnea. Dr. Myers indicated that Mr. Littles would undergo lab work and follow-up in twelve months.

16. On March 15, 2010, Mr. Littles' urinalysis revealed an elevated urine protein of 100 milligrams per deciliter (proteinuria).

17. Despite the fact proteinuria can be a sign of kidney damage, Mr. Littles was not notified of the potential significance of this finding but, instead, was informed by letter from Dr. Harry H. Robinson, III that his March 2010 labs had revealed "good kidney function."

18. No effort was made on the part of Mr. Littles' Charleston VAMC healthcare providers to investigate the etiology of the proteinuria.

19. After this, Mr. Littles spent time working overseas, but he continued to be seen at the Charleston VAMC and regularly checked in with his healthcare providers.

20. On April 7, 2014, Mr. Littles presented to the Charleston VAMC for a primary care appointment. At this visit, it was noted that his BMI had increased and that he was severely hypertensive. Mr. Littles was prescribed medications for his hypertension (Lisinopril and hydrochlorothiazide) and referred for lab work.

21. On April 11, 2014, Mr. Littles underwent lab work at the Charleston VAMC that revealed an elevated creatinine (1.91), a depressed EGFR (40.8), and urine specific gravity trace protein in urine that was markedly diluted.

22. All of these results were abnormal and consistent with kidney disease, yet Mr. Littles was not informed of their significance. Instead, on April 17, 2014, Mr. Littles' Charleston VAMC healthcare providers simply recommended that labs be rechecked in 4-6 weeks.

23. On April 18, 2014, Mr. Littles was prescribed another antihypertensive medication (Amlodipine), due to continued hypertension.

24. On June 18, 2014, Mr. Littles was seen by Dr. Danielle V. Bowen ("Dr. Bowen") for consultation regarding his hypertension and management of blood pressure. Dr. Bowen

reviewed Mr. Littles' chart and noted in pertinent part: "SCr elevated, recommend close monitoring." However, Dr. Bowen failed to order repeat lab work, despite an elevated creatinine and the fact that Mr. Littles was now on three different antihypertensive medications.

25. On April 17, 2015, Mr. Littles returned to the Charleston VAMC for a primary care appointment with Dr. Dianne Quante Campbell ("Dr. Campbell"). Dr. Campbell made no mention of, nor expressed any concern about, his prior lab/urinalysis results, and no action was taken to investigate his underlying kidney function.

26. On April 24, 2015, it was reported that Mr. Littles' creatinine was still elevated and that his EGFR was still depressed, but no intervention was considered and/or initiated.

27. Instead, on April 30, 2015, a nurse noted in Mr. Littles' chart an elevation in a few lab values, which were then forwarded to Mr. Littles' primary care provider for further review.

28. On August 12, 2015, Dr. Campbell finally acknowledged receipt of the April 30, 2015 note, but took no action to evaluate Mr. Littles' kidney function.

29. During 2016, 2017, and 2018, despite remaining a patient of Dr. Campbell's, continuing to see her for primary care appointments, and even communicating with her while overseas, Dr. Campbell failed to order any additional lab tests to assess Mr. Little's kidney function.

30. On April 12, 2018, a urinalysis revealed a urine protein of 100 milligrams per deciliter with urine specific gravity of 1.010, but, again, no action was taken to evaluate Mr. Littles' kidney function.

31. On May 2, 2019, Mr. Littles had labs drawn, which revealed an increasingly elevated creatinine of 2.42 and a markedly depressed EGFR of 36.

32. These labs were repeated on May 15, 2019 and revealed an increasingly elevated creatinine of 2.7 as well as depressed EGFR of 32.

33. On May 21, 2019, Mr. Littles was seen by Dr. Campbell in the primary care clinic as part of his surgical clearance to have pins removed from a forearm injury.

34. At this visit, Dr. Campbell finally took note of his kidney function test results—specifically the elevated creatinine—and ordered a nephrology consultation.

35. On June 5, 2019, Mr. Littles was seen in consultation by Dr. Milos Budisavljevic ("Dr. Budisavljevic"). Dr. Budisavljevic noted Mr. Littles' long-term history of proteinuria and elevated creatinine and authored the following note:

```
39 yo AA man with CKD.
Looking into available information I found out that pt had normal creatinine
1.17 mg/dl in May 2010. A that time on U/A he had 100 mg/dl protein.
He did not have renal related bloodwork until April 2014 when creatinine was 1.9
mg/dl. Again no bloodwork is available until May 2019 when creatinine was 2.42
and 2.7 mg/dl.
Pt states that he never seen nephrologist and that nobody told him that he has
kidney problems until May 2019??????!!!!!
```

36. A renal ultrasound performed at this visit revealed echogenic kidneys that were consistent with chronic kidney disease.

37. On December 19, 2019, Mr. Littles ultimately underwent a renal biopsy, which revealed that his chronic kidney disease was caused by secondary focal segmental glomerular sclerosis (FSGS).

38. On January 15, 2020, Mr. Littles was informed of the biopsy results and learned that he would require end stage renal disease therapy in the future, which includes dialysis and kidney transplantation.

39. On September 9, 2020, Mr. Littles learned that his creatinine continued to rise and that his chronic kidney disease had advanced to stage IV.

40. At present, Mr. Littles is on dialysis and needs a kidney transplant.

41. As a direct and proximate result of the negligent care provided to him by his healthcare providers at the Charleston VAMC, Mr. Littles suffered, and continues to suffer, from end stage renal disease.

42. Had Mr. Littles' healthcare providers at the Charleston VAMC appropriately monitored his concerning lab values and further evaluated and treated those concerns—including a nephrology consult—in a timely manner, Mr. Littles likely would have a much better current condition and prognosis, as appropriate management can significantly slow down the disease's progression.

## **COUNT I – NEGLIGENCE**

43. Mr. Littles restates and re-alleges paragraphs 1 through 42 as if fully stated herein.

44. As a provider of medical services to Mr. Littles, the United States and its agents, servants or employees at the Charleston VAMC and its affiliates, including but not limited to Dr. Campbell, owed Mr. Littles a duty to provide him with medical care consistent with the governing standard of medical care.

45. The agents, servants or employees of the United States at the Charleston VAMC and its affiliates, including but not limited to Dr. Campbell, Dr. Bowen, and Dr. Myers, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

    a. Negligent failure to assess the etiology of significant dipstick proteinuria from March 2010 through June 2019;

    b. Negligent failure to appreciate and follow-up on Mr. Littles' abnormal lab work from April 2014 through June 2019;

    c.    Negligent failure to perform repeat lab work in an appropriate, timely manner following the initiation of antihypertensive medications;

    d.    Negligent failure to appropriately counsel Mr. Littles about his increased risks for chronic kidney disease and advise him on the appropriate and necessary health modifications;

    e.    Negligent failure to order a timely nephrology consult;

    f.    Negligent failure to appreciate and timely evaluate the concerning lab results from April 24, 2015;

    g.    Negligent failure to obtain an adequate trace urine protein test on April 12, 2018;

    h.    Negligent failure to properly evaluate and timely diagnose Mr. Littles' chronic kidney disease; and

    i.    Other deviations from the standard of care which may be developed through additional factual investigation, expert review, and discovery.

## **DAMAGES**

46.    As a direct and proximate result of the aforementioned acts of negligence, Mr. Littles suffered all the injuries and damages described herein, including the following:

    a.    Delayed diagnosis of chronic kidney disease;

    b.    Untreated chronic kidney disease;

    c.    Progression of the disease and diminished treatment options;

    d.    Permanent renal damage with the need for dialysis and renal transplant;

    e.    Physical pain, suffering, discomfort, and inconvenience;

    f.    Emotional distress and mental anguish;

      g.      Reduced life expectancy;

      h.      Loss of enjoyment of life;

      i.      Disruption of activities of daily living;

      j.      Economic losses; and

      k.      Other damages sustained by Plaintiff as a proximate result of the negligence of the government's employees and/or agents.

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment in his favor against the Defendant awarding him compensatory damages in the amount of THREE MILLION DOLLARS ($3,000,000.00), together with prejudgment interest and any other costs as he may be lawfully entitled to recover.

    Respectfully submitted,

    /s/ James W. Clement
    **James W. Clement (Fed ID# 12720)**
    Direct:  (843) 727-2224
    Email:  Clement@WGLFIRM.com

    **WALKER GRESSETTE & LINTON, LLC**
    Mail:    P.O. Drawer 22167, Charleston, SC 29413
    Office:  66 Hasell Street, Charleston, SC 29401
    Phone:  (843) 727-2200

    ***ATTORNEY FOR THE PLAINTIFF***
    ***GREGORY LITTLES***

December 5, 2022
Charleston, South Carolina